IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEFFERY BATTLE,<br><br>            Plaintiff<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>            Defendant | Case No. 1:23-cv-01822-LKG |

**MEMORANDUM IN SUPPORT OF DEFENDANT MICROSOFT CORPORATION'S
<u>MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY</u>**

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................ | 1 |
| II. | RELEVANT FACTUAL BACKGROUND .......................................................................... | 1 |
| | A. The Microsoft Services Agreement. ......................................................................... | 1 |
| | B. Plaintiff Accepted the MSA. .................................................................................... | 2 |
| | C. The Parties' Agreement to Arbitrate. ....................................................................... | 3 |
| III. | LEGAL STANDARD .......................................................................................................... | 5 |
| IV. | ARGUMENT ........................................................................................................................ | 5 |
| | A. The Arbitration Agreement is Valid and Enforceable. ............................................. | 6 |
| | B. The Arbitration Agreement Encompasses Plaintiff's Claims. .................................. | 7 |
| | C. This Action Should be Dismissed. ............................................................................ | 8 |
| V. | CONCLUSION ..................................................................................................................... | 9 |

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ..................................................................................................................1

*Boland v. Amazon.com Sales, Inc.*,
   628 F. Supp. 3d 595 (D. Md. 2022) ......................................................................................6, 7

*Campbell v. Comcast Cable. Commc'ns Mgmt., LLC*,
   No. 21-CV-2000-CB, 2022 WL 4237109 (D. Md. Sept. 13, 2022) ......................................5, 8

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,
   252 F.3d 707 (4th Cir. 2001) ....................................................................................................8

*Dean Witter Reynolds v. Byrd*,
   470 U.S. 213 (1985) ..................................................................................................................6

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1983) ....................................................................................................................5

*J.A. through Allen v. Microsoft Corp.*,
   No. C20-0640-RSM-MAT, 2021 WL 1723454 (W.D. Wash. Apr. 2, 2021) ...........................6

*Johnson v. Circuit City Stores*,
   148 F.3d 373 (4th Cir. 1991) ....................................................................................................5

*Levin v. Alms and Assoc., Inc.*,
   634 F.3d 260 (4th Cir. 2011) ....................................................................................................7

*Lyles v. Chegg, Inc.*,
   No. RDB-19-3235, 2020 WL 1985043 (D. Md. Apr. 27, 2020) ..............................................6

*Maher v. Microsoft Corp.*,
   No. 17-CV-00753, 2018 WL 1535043 (N.D. Ill. Mar. 29, 2018) .............................................6

*Melo v. Zumper, Inc.*,
   439 F. Supp. 3d 683 (E.D. Va. 2020) .......................................................................................6

*Mendoza v. Microsoft Inc.*,
   No. 2:14-CV-00316-MJP, 2014 WL 4540225 (W.D. Wash. Sep. 11, 2014) ...........................6

*Mey v. DIRECTV, LLC*,
   971 F.3d 284 (4th Cir. 2020) ....................................................................................................7

*Murray v. UFCW Int'l, Local 400,*
    289 F.3d 297 (4th Cir. 2002) ..................................................................................................5

*Romanov v. Microsoft Corp.,*
    No. 21-03564-FLW, 2021 WL 3486938 (D.N.J. Aug. 9, 2021) ..............................................6

*Stone v. Wells Fargo Bank, N.A.,*
    361 F. Supp. 3d 539 (D. Md. 2019) .........................................................................5, 6, 7, 8

*Walsh v. Microsoft Corp.,*
    No. C14-424-MJP, 2014 WL 4168479 (W.D. Wash. Aug. 20, 2014) ....................................7

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(3) ................................................................................................................1, 5

Federal Arbitration Act ("FAA") .........................................................................................1, 4, 5, 8

**I.      INTRODUCTION**

Plaintiff Jeffery Battle alleges he suffered damages as a result of inaccurate search results produced by Microsoft's Bing and Bing Chat (now branded under Microsoft Copilot) services. Whatever the merits of Mr. Battle's claims may be, they should be evaluated in arbitration proceedings as Mr. Battle agreed.  As a Microsoft account user, Mr. Battle repeatedly agreed to the Microsoft Services Agreement ("MSA"), pursuant to which he agreed to arbitrate disputes, including those involving the tort claims at issue here, before the American Arbitration Association ("AAA").  Microsoft moves this Court to compel arbitration and dismiss or stay this action under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, and Federal Rule of Civil Procedure 12(b)(3) because Mr. Battle's claims are subject to mandatory, binding arbitration under the MSA. The Federal Arbitration Act and settled Supreme Court precedent require that this agreement be enforced.  *See* 9 U.S.C. §§ 3-4; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).

**II.     RELEVANT FACTUAL BACKGROUND**

**A. The Microsoft Services Agreement.**

The MSA governs the use of Microsoft's online consumer products and services, including Bing and Copilot.  *See* Declaration of Suzanne Fogarty ("Fogarty Decl."), ¶ 2.  All Microsoft account holders are required to accept and agree to be bound by the terms of the MSA—which are updated approximately every 12 to 18 months—if they choose to continue use of the covered services specified in the agreement. *Id.* ¶¶ 2-3.

The versions of the MSA in effect during the time period relevant to this dispute are the August 15, 2022 version and the subsequent (and current) version, which went into effect in September 2023. *Id.* ¶ 4.  When Microsoft updated the MSA in August 2022 and September 2023, it notified users both by email and by "interrupt notices" — a window that appears on the user's screen and requires user action to proceed.  First, before the respective updates went into effect,

1

Microsoft provided notice of each of the August 2022 and September 2023 MSA updates via email.

*Id.* ¶ 5.  The 2022 email informed users of the new terms of service as follows:

> We're making these updates to clarify our terms and ensure that they remain transparent for you, as well as to cover new Microsoft products, services and features ….
>
> The updates to the Microsoft Services Agreement will take effect on August 15, 2022. ***If you continue to use our products and services on or after August 15, 2022, you are agreeing to the updated Microsoft Services Agreement.*** If you do not agree, you can choose to discontinue using the products and services, and close your Microsoft account before these terms become effective.

*Id.*, Ex. C (emphasis added).  The email included bold, underlined links to the full text of the MSA, as well as an FAQ page summarizing the notable changes.  *Id.*  Microsoft sent a nearly identical email notice for the September 2023 MSA update.  *Id.* ¶ 5, Ex. D.  These email notices for the August 2022 and September 2023 updates were sent to all Microsoft account holders between June 15, 2022 and July 22, 2022, and August 2, 2023 and September 15, 2023, respectively.  *Id.*

Next, in addition to the email notices, account holders were notified of the MSA updates via interrupt notice.  The interrupt notices stated that Microsoft had updated the MSA and provided a link to the full text of the MSA labeled "Learn More."  *Id.* ¶ 6, Ex. E.  Through these interrupt notices, Microsoft users were made aware of and required to accept the MSA updates that now governed their use of the services by clicking a button labeled "Next."  *Id.* ¶ 6.  Users could not access their Microsoft account or online products or services without clicking on the notice of the MSA update.  *Id.*

### B. Plaintiff Accepted the MSA.

Plaintiff Jeffery Battle has held a Microsoft account since 2003.  *Id.* ¶ 3.  Throughout this period, Plaintiff was repeatedly required to accept and agree to the MSA's terms of service to continue using covered Microsoft products and services.  *Id.* ¶ 5.  As a Microsoft account holder,

Plaintiff would have received email notice of each periodic update to the MSA, including both the August 2022 and September 2023 updates, notifying him of the new terms of service going into effect (with a link to the updated MSA) and instructing him that by continuing to use the services covered by the MSA (including Bing, Bing Search, and, as of the 2023 update, Bing Conversational Experiences (also known as Bing Chat, now rebranded under Microsoft Copilot)[1]) he was agreeing to the updated Agreement.  *Id.*  For each of these updates, Plaintiff also had to click "Next" on an interrupt notice that was displayed following each MSA update to acknowledge his notice of the updated agreement, in order to continue accessing his account.  *Id.* ¶ 6.  Most recently, Plaintiff clicked to acknowledge the latest update of the MSA on October 12, 2023.  *Id.* ¶ 7.  As evidenced by Plaintiff's Motion, Plaintiff has continued to use the services at issue, including Bing and now Copilot, at least through May 2024, long after receiving notice of and agreeing to the terms of the MSA.  *See* Dkt. 35 at 5.

### C. The Parties' Agreement to Arbitrate.

Microsoft's MSA has long contained a mandatory arbitration clause.  For years before this dispute up to the present day, the arbitration provision has been conspicuously disclosed and emphasized on the first page of the MSA, directing users to the specific section containing the complete terms.  *Id.* ¶ 4.  For example, the first page of the August 2022 and September 2023 versions of the MSA states:

> **IF YOU LIVE IN (OR YOUR PRINCIPAL PLACE OF BUSINESS IS IN) THE UNITED STATES, PLEASE READ THE BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER IN SECTION 15. IT AFFECTS HOW DISPUTES ARE RESOLVED.**

Fogarty Decl., Ex. A at 1 (emphasis in original).

---

[1] In November 2023, the covered services list in the MSA was updated to reflect the rebranding of Bing Conversational Experiences (also known as Bing Chat) under Microsoft Copilot.  The current covered services list is available here:   https://www.microsoft.com/en-us/servicesagreement/#serviceslist.

3

Section 15 of both the August 2022 and September 2023 versions of the MSA contains a mandatory arbitration agreement:

> **Binding Arbitration and Class Action Waiver If You Live In (or, If a Business, Your Principal Place of Business Is In) the United States.** We hope we never have a dispute, but if we do, you and we agree to try for 60 days, upon receipt of a Notice of Dispute, to resolve it informally. If we can't, you and we agree to **binding individual arbitration before the American Arbitration Association ("AAA") under the Federal Arbitration Act ("FAA")**, and not to sue in court in front of a judge or jury. Instead, a neutral arbitrator will decide and the arbitrator's decision will be final except for a limited right of review under the FAA.

*Id.* § 15 (emphasis in original). The arbitration provision defines "dispute" "as *broad as it can be*. It includes *any claim or controversy between you and us concerning the Services* [defined to include Bing Search, Bing.com, and Bing Conversational Experiences (now rebranded under Microsoft Copilot)], ... your Microsoft account, ... or these Terms, under any legal theory including contract, warranty, tort, statute, or regulation," exempting only certain intellectual property disputes. *Id.* § 15(a) (emphasis added). The MSA expressly grants the arbitrator the power to award injunctive relief, *id.* § 15(d) ("The arbitrator may award declaratory or injunctive relief."), and adopts the AAA Commercial Rules providing a vehicle for emergency injunctive relief before a panel is selected.

The MSA requires a party with a dispute to submit a Notice of Dispute form and engage in a 60-day amicable resolution period, followed by binding arbitration if needed. *See id.* Ex. A, B. Plaintiff did not submit the required form or engage in the dispute resolution process. Instead, Plaintiff filed this lawsuit in July 2023. *See* Dkt. 1. Plaintiff asserts a cause of action for defamation and alleges that he suffered damages as a result of inaccurate search results produced by Microsoft's Bing. *Id.* On May 2, 2024, Plaintiff filed his Motion for Injunction – Permanent

("Motion for Injunction"), which effectively restates his Complaint and seeks permanent injunctive relief. *See* Dkt. No. 35.

### III. LEGAL STANDARD

In the Fourth Circuit, a motion to compel arbitration is "properly treated as a motion to dismiss for improper venue under Rule 12(b)(3)." *See Campbell v. Comcast Cable. Commc'ns Mgmt., LLC*, No. 21-CV-2000-CB, 2022 WL 4237109, *3 (D. Md. Sept. 13, 2022) (granting motion to compel under F.R.C.P. 12(b)(3)); *see also Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 594 n.2 (4th Cir. 2023) ("arbitration clauses are enforced in court by way of Federal Rule of Civil Procedure 12(b)(3) motions to dismiss for improper venue").

Under the FAA, courts are required to compel arbitration when the parties have entered into a valid and enforceable agreement to arbitrate and the dispute falls within the scope of the agreement. *See* 9 U.S.C. §§ 3–4; *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 547 (D. Md. 2019) (citing *Murray v. UFCW Int'l, Local 400*, 289 F.3d 297, 301 (4th Cir. 2002)). When deciding whether parties have entered into a valid and enforceable agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1991). In so doing, "it should be kept in mind that 'questions of arbitrability must be addressed **with a healthy regard for the federal policy favoring arbitration**.'" *Id.* (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1983)) (emphasis added). Put another way, "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration[.]" *Johnson*, 148 F.3d at 377 (quotation and citation omitted).

### IV. ARGUMENT

To compel arbitration, a court must "engage in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute

falls within the substantive scope of that agreement." *Stone*, 361 F. Supp. 3d at 547. Both requirements are established here.

### A. The Arbitration Agreement is Valid and Enforceable.

As set forth above, Plaintiff agreed to arbitrate claims against Microsoft when he assented to the terms of the MSA. *See supra*, Section II.B. Courts in this Circuit have routinely enforced similar online agreements where, as here, users are provided notice of and manifest assent to the terms, including by signing up for an account or clicking a button or link. *See Boland v. Amazon.com Sales, Inc.*, 628 F. Supp. 3d 595, 598–99 (D. Md. 2022) (enforcing broad arbitration provision in online publishing platform's terms and conditions); *Lyles v. Chegg, Inc.*, No. RDB-19-3235, 2020 WL 1985043, at *3 (D. Md. Apr. 27, 2020) (enforcing arbitration provision where the website "reasonably communicated the [terms of use] and clearly indicated that, by signing up for a Chegg account, a user agreed to those terms."); *see also Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 697 (E.D. Va. 2020) (enforcing forum selection clause because the plaintiff "had — at the very least — constructive knowledge of Zumper's terms found in the Agreement and that by clicking 'Create Account,' he manifested assent to them").

Further, consistent with the federal policy favoring arbitration and the requirement that courts "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 221 (1985), federal courts across the country have routinely enforced the arbitration provision in Microsoft's MSA. *See, e.g.*, *J.A. through Allen v. Microsoft Corp.*, No. C20-0640-RSM-MAT, 2021 WL 1723454 (W.D. Wash. Apr. 2, 2021) (granting motion to compel arbitration under MSA); *Romanov v. Microsoft Corp.*, No. 21-03564-FLW, 2021 WL 3486938 (D.N.J. Aug. 9, 2021) (same); *Maher v. Microsoft Corp.*, No. 17-CV-00753, 2018 WL 1535043 (N.D. Ill. Mar. 29, 2018) (same); *Mendoza v. Microsoft Inc.*, No. 2:14-CV-00316-MJP, 2014 WL 4540225 (W.D.

Wash. Sep. 11, 2014) (same); *Walsh v. Microsoft Corp.*, No. C14-424-MJP, 2014 WL 4168479 (W.D. Wash. Aug. 20, 2014) (same).

The same result is warranted here. Plaintiff was required to click to manifest assent to the MSA and had opportunity to review the MSA by clicking the hyperlinked terms. Fogarty Decl., ¶¶ 5-6. Further, consistent with the MSA's terms, Mr. Battle received notice of and opportunity to review each MSA update before it went into effect—most recently in or around August-September 2023—through email notifications. *Id.* ¶ 7. And Mr. Battle has consistently used Microsoft services, including through his Hotmail account and his use of Bing Chat/Copilot (as evidenced by his Motion for Injunction), on the condition that continued use required assent to the terms of the MSA. *Id.* ¶ 5. Under these circumstances, the parties' agreement to arbitrate must be enforced. *See Boland*, 628 F. Supp. 3d at 597, 601 (enforcing arbitration provision in online terms and conditions accepted by user).

### B. The Arbitration Agreement Encompasses Plaintiff's Claims.

Plaintiff's claims against Microsoft fall squarely within the parties' agreement to arbitrate. Because "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," a court "may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Stone*, 361 F. Supp. 3d at 556 (internal citations omitted). Accordingly, the Fourth Circuit has found that broad provisions requiring arbitration of "all disputes and claims" between the parties encompass even claims unrelated to the contract. *See Mey v. DIRECTV, LLC*, 971 F.3d 284, 293-94 (4th Cir. 2020); *see also Levin v. Alms and Assoc., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011) ("The language is broad enough to encompass *all* agreements and *any* disputes, past and present, especially given that the presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded.").

Here, Plaintiff agreed to arbitrate "any claim or controversy between you and [Microsoft] concerning" the services specified in the MSA, which include Bing and Bing.com, "under **any legal theory** including contract, warranty, **tort**, statute, or regulation[.]" *Id.*, Ex. A § 15(a) (emphasis added). This broad provision wholly encompasses Plaintiff's defamation claim, which sounds in tort and indisputably "concerns" services covered by the MSA. Specifically, Plaintiff alleges that Microsoft's Bing service produced the allegedly defamatory statements. *See* Dkt. 1 at 1-2. Both the August 2022 and September 2023 versions of the MSA define dispute "as broad as it can be" to include "any claim or controversy between you and us concerning the Services." Likewise, both MSAs expressly empower the arbitrator to award "declaratory or injunctive relief," as requested by Plaintiff's Motion for Injunction, and adopt the AAA Commercial Rules providing a vehicle for emergency injunctive relief before a panel is selected. *See* Dkt. 35. The present case is a claim or controversy between Plaintiff and Microsoft concerning the Services, specifically Bing and Bing Search (and now including Copilot), and thus must be resolved through "binding individual arbitration before the American Arbitration Association ("AAA"), under the Federal Arbitration Act." *See* Fogarty Decl., Ex. A & B, § 15.

### C. This Action Should be Dismissed.

Courts in this District have routinely held that dismissal is the appropriate remedy where, as here, "all of the issues presented in a lawsuit are arbitrable." *See Campbell*, 2022 WL 4237109 at *2 (quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (compelling arbitration and dismissing complaint); *see also Stone*, 361 F. Supp. 3d at 558 (same). Because all of Plaintiff's claims "concern" covered Microsoft services and are therefore subject to mandatory arbitration, this action should be dismissed so that the parties can resolve this

8

dispute in their contractually agreed-upon forum. In the alternative, Microsoft respectfully requests that the Court stay this action pending arbitration.

## V. CONCLUSION

For the reasons stated herein, the Court should compel arbitration of Plaintiff's claims, including his request for injunctive relief, and dismiss this case, or alternatively, stay the case pending arbitration.

June 10, 2024

Respectfully submitted,

By: */s/ Nicole Kozlowski*
Brett Ingerman
Nicole Kozlowski
650 S. Exeter Street, Suite 1100
Baltimore, MD 21202
Tel.: (410) 580-3000
Fax: (410) 580-3001

Danny Tobey
(to be admitted *pro hac vice*)
1900 N. Pearl St., Suite 2200
Dallas, TX 75201
Tel.: (214) 743-4500
Fax: (214) 743-4545
danny.tobey@us.dlapiper.com

Ashley Allen Carr
(to be admitted *pro hac vice*)
Karley Buckley
(to be admitted *pro hac vice*)
303 Colorado Street, Suite 3000
Austin, TX 78701
Tel.: (512) 457-7000
Fax: (512) 457-7001
ashley.carr@us.dlapiper.com

*Attorneys for Defendant Microsoft Corporation*