IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFERY BATTLE,

        Plaintiff

v.

MICROSOFT CORPORATION,

        Defendant

Case No. 1:23-cv-01822-LKG

**REPLY IN SUPPORT OF DEFENDANT MICROSOFT CORPORATION'S
MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY**

I.     INTRODUCTION

Plaintiff's Opposition does nothing to distinguish this case from controlling law enforcing arbitration agreements, nor provide any basis for this Court to negate his plain agreement under the MSA, to arbitrate "***any claim or controversy*** between [him] and [Microsoft] concerning" the services specified in the MSA, "under ***any legal theory*** including contract, warranty, ***tort***, statute, or regulation…." The MSA's broad arbitration provision squarely encompasses Mr. Battle's claims, and contrary to his conclusory statements, no MSA update targeted him personally, no conduct "waived" arbitration, and no evidence in the record contradicts that he repeatedly assented to the MSA, including in 2022 and 2023, as a condition of using Microsoft's services (to the contrary, he expressly admits agreeing to the most recent MSA as a condition of continued use). Consistent with the unambiguous terms of the parties' agreement and governing law, Microsoft's Motion should be granted, and this dispute should be submitted to arbitration.

II.    **THE PARTIES' AGREEMENT TO ARBITRATE MUST BE ENFORCED.**

The parties have a valid agreement to arbitrate, and Plaintiff's claims fall within the scope of that agreement. *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015); *see also Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 547 (D. Md. 2019) ("A district court ... has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview."). Plaintiff's attempts to sidestep the MSA's arbitration clause must be rejected.

   A.  **The Parties' Agreement to Arbitrate is Valid and Enforceable.**

Mr. Battle agreed to arbitrate all his claims against Microsoft by assenting to the terms of the MSA.  Contrary to his assertions, Microsoft has submitted uncontroverted evidence demonstrating the applicability of the MSA and its arbitration provision to Plaintiff's claims, including true and accurate copies of the relevant versions of the MSA and a sworn declaration of

Suzanne Fogarty attesting to the means through which Mr. Battle received notice of and accepted the MSA terms. *See* Dkt. 40-2, Declaration of Suzanne Fogarty ("Fogarty Decl."), ¶ 5 ("As a Microsoft account holder and an active Microsoft user during these time periods, Mr. Battle would have received copies of both email notices …. In order to keep using his Microsoft services during all relevant times, Mr. Battle necessarily had to agree to these versions of the MSA."), ¶ 6 ("For each of these updates, Mr. Battle had to click "Next" on the interrupt notice during the relevant timeframe in order to continue accessing his account under the new versions of the MSA.").[1] Mr. Battle concedes as much in describing his recent reaffirmation of the terms. *See* Opp. at 2-3. Now he claims he should enjoy the benefit of his Microsoft services without being bound by their governing terms.[2] But that is not the law.

Mr. Battle's accusations challenging the validity of the MSA and the arbitration provisions due to "fraud" are legally and factually unsupported. Mr. Battle is mistaken in his assertion that the 2003 MSA was in effect when he filed his complaint. *See* Opp. at 2. In fact, the MSA has been updated regularly, with corresponding notice to and assent by account holders, through the intervening years, and has contained a binding arbitration provision for more than a decade. *See* Fogarty Decl., ¶¶ 2-3. Mr. Battle initiated this action on July 7, 2023. Dkt. 1. As set forth in Microsoft's Motion and the accompanying Declaration of Suzanne Fogarty, the operative versions of the MSA during the period relevant to this dispute are the August 15, 2022 version and the subsequent (and current) version, which went into effect in September 2023. Fogarty Decl., ¶ 4

---

[1] As described in the Motion, both the email notification sent to Mr. Battle in advance of the MSA update (most recently in September 2023) and the interrupt notice that followed contained prominent, blue-font links to the MSA. *See* Motion at 2.
[2] If this were permissible, not only could a user flout the arbitration provisions, but would presumably be free to violate the Code of Conduct in the MSA, by cyberstalking or distributing malware, for example.

("I understand that Mr. Battle's claims relate to the time period beginning in or around May 2023 and continuing into November 2023. The MSA in effect in May 2023 was the August 15, 2022 MSA."). The operative agreements contain materially identical arbitration provisions, prominently noted in the document's Introduction and in bold, capital letters immediately under the "Microsoft Services Agreement" title in each version. *See id.* Mr. Battle does not dispute that he continued to use services covered by the MSA from the time he created his account through the present, or that the Microsoft services he complains of are explicitly among those covered by the MSA. Neither can he credibly deny that he accepted the terms of these regularly updated agreements, including the August 2022 and September 2023 versions of the MSA, as part of that continued use, as he was required to do.

Contrary to his conclusory assertions, Mr. Battle's use of Microsoft services is subject to the same MSA terms as that of all other users, and he received notice of and accepted those terms through Microsoft's regular update process. As explained in Microsoft's Motion, the terms of the MSA are routinely updated every 12-18 months and all account holders are provided with multiple opportunities to review the terms before they go into effect (and close their accounts if they disagree with them), and are required to click to acknowledge the terms before continuing to use the services. That is exactly what Mr. Battle did in 2022, almost a year prior to the filing of his Complaint, and again in 2023. *See* Fogarty Decl., ¶¶ 5-6. The notices and interrupts he claims personally targeted him were those provided to every account holder. And as he admits, despite filing claims based on his use of services covered by the MSA, he opted to renew his agreement with Microsoft by clicking his acknowledgment and by continuing to use those services.[3]

---

[3] Indeed, Mr. Battle's own filings show that he was logged in to his Microsoft account when he generated the results at issue in this case—as evidenced by the "J." initial and number visible in the right-hand corner of his proffered screenshots. *See, e.g.*, Dkt. 30-2, Dkt. 35-3.

Notwithstanding his imagined claims of targeting, nothing about these circumstances suggests fraud or trickery, and Mr. Battle has not and cannot put forth any support for his conspiracy theory. Indeed, courts around the country have routinely upheld the enforceability of the MSA's arbitration provision and the means through which users such as Mr. Battle assent to the same arbitration provision at issue here.  *See* Mot. at 6-7 (citing cases).

Nothing in Plaintiff's Opposition changes that the parties' agreement to arbitrate is valid and must be enforced.  *See Stone*, 361 F. Supp. 3d 539 at 547 (citing *Murray v. UFCW Int'l, Local 400*, 289 F.3d 297, 302 (4th Cir. 2002)); *see also Johnson v. Circuit City Stores, Inc.,* 148 F.3d 373, 377 (4th Cir. 1991) ("[I]t should be kept in mind that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" (internal citations omitted)).

### B.  Plaintiff's Tort Claims are Subject to Mandatory Arbitration.

Plaintiff's assertion that his claim for "assault" is not arbitrable is equally without merit. Plaintiff argues that his case-initiating documents included a "check box indicating, 'Assault, Libel & Slander'" and that he was "assaulted" by the services at issue.  *See* Opp. at 3.  But he provides no authority or basis for the proposition that this alleged injury, arising from his use of the services, is not arbitrable.  In fact, the MSA is crystal clear on this issue: it states that **"any claim or controversy between you and us concerning the Services** [defined to include Bing Search, Bing.com, and Bing Conversational Experiences (now rebranded under Microsoft Copilot)] …. under *any legal theory* including contract, warranty, *tort*, statute, or regulation" must be submitted to AAA arbitration.  Fogarty Decl., Ex. A § 15(a) (emphasis added).  This broad provision wholly encompasses Plaintiff's *tort* claim that he was harmed by inaccurate outputs from the Bing and Copilot services (he claims those services "assaulted" him).  *See Hetrick Companies LLC v. IINK Corp.*, __ F.Supp.3d __, 2024 WL 47408, at *10 (E.D. Va. Jan. 3, 2024) (Compelling arbitration

of tort claims that "stem from a 'dispute ... relating to the Services' that [defendant] provided to [plaintiff] and are therefore covered by the plain terms of the Agreement.").

As required by the FAA and Supreme Court precedent, courts in this Circuit routinely enforce similar arbitration clauses as written, "especially given that the presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded." *See Levin v. Alms & Assocs.*, 634 F.3d 260, 267 (4th Cir. 2011); *Mey v. DIRECTV, LLC*, 971 F.3d 284, 287 (4th Cir. 2020) ("In light of the expansive text of the arbitration agreement, the categories of claims it specifically includes, and the parties' instruction to interpret its provisions broadly, we must conclude that it is "'susceptible of an interpretation'" that covers [plaintiff's claims]."); *see also Ford v. UHG I LLC*, No. 22-cv-00840-LKG, 2023 WL 2185751, at *5 (D. Md. Feb. 23, 2023) ("And so, as the Borrower Agreement makes clear, 'the scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.' Given this, the Court agrees with Defendants that Plaintiff's claims in this action are subject to a valid arbitration agreement.").

Because Mr. Battle's claim sounds in tort and indisputably "concerns" services covered by the MSA, the present dispute falls squarely within the scope of the parties' agreement to arbitrate.

**C. Microsoft Did Not Waive Its Right to Enforce the Arbitration Agreement.**

Finally, Plaintiff attempts to avoid arbitration by alleging—again, without legal support—that Microsoft somehow "relinquished" the right to enforce the arbitration agreement. Not so. Microsoft has consistently maintained its right to arbitrate under the MSA.

To waive the right to enforce an arbitration agreement, a defendant "must (1) know of an existing right to arbitration; and (2) act inconsistently with that right." *Ford*, 2023 WL 2185751, at *6. Here, Plaintiff has alleged no facts indicating that Microsoft has acted inconsistently with its right to arbitrate, because none exist. Plaintiff cites to correspondence submitted to Microsoft's webpage "Report a Concern to Bing" from June to July 2023. Opp. at 4-6. However, nothing

about these communications constitutes a waiver on behalf of Microsoft. Plaintiff's excerpted communications show Microsoft's efforts to resolve Plaintiff's concerns through normal customer service channels, but those routine customer service efforts have no bearing whatsoever on the enforceability of the arbitration agreement. In fact, the arbitration provisions of the MSA specifically contemplate attempts to resolve a user compliant through those normal channels before initiation of arbitration. *See* Fogarty Decl., Ex. A § 15(b) ("If you have a dispute that our customer service representatives can't resolve and you wish to pursue arbitration, you must first send an individualized Notice of Dispute to Microsoft Corporation, ATTN: CELA Arbitration … or submit the form electronically. The Notice of Dispute form is available at https://go.microsoft.com/fwlink/?LinkId=245499.").

Plaintiff never initiated formal dispute resolution or arbitration proceedings as required by the MSA; instead, he filed this case in court as prohibited by it. *See* Mot. at 4. Microsoft notified the Court and Mr. Battle of its intention to move to compel arbitration in its first substantive appearance in this case on December 18, 2023 and has consistently acted in a manner that demonstrates its intent to uphold the arbitration agreement. *See* Dkt. 20. Accordingly, Plaintiff's attempt to evade his agreement to arbitration on the basis of waiver fails as well.

### III.   CONCLUSION

For the foregoing reasons, the Court should grant Microsoft's Motion to Compel Arbitration of Plaintiff's claims, and dismiss, or alternatively, stay this case pending arbitration.

| | |
|---|---|
| July 1, 2024 | Respectfully submitted,<br><br>By:  */s/ Nicole Kozlowski*<br>Brett Ingerman<br>Nicole Kozlowski<br>650 S. Exeter Street, Suite 1100<br>Baltimore, MD 21202<br>Tel.: (410) 580-3000 |

Fax: (410) 580-3001

Danny Tobey
(to be admitted *pro hac vice*)
1900 N. Pearl St., Suite 2200
Dallas, TX 75201
Tel.: (214) 743-4500
Fax: (214) 743-4545
danny.tobey@us.dlapiper.com

Ashley Allen Carr
(to be admitted *pro hac vice*)
Karley Buckley
(to be admitted *pro hac vice*)
303 Colorado Street, Suite 3000
Austin, TX 78701
Tel.: (512) 457-7000
Fax: (512) 457-7001
ashley.carr@us.dlapiper.com

*Attorneys for Defendant Microsoft Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of July, 2024, a copy of the foregoing Reply in Support of Defendant Microsoft Corporation's Motion to Compel Arbitration and Dismiss or Stay was served by first class US Mail, postage prepaid, to:

>Jeffery Battle (*pro se*)
>P.O. Box 448
>Laurel, MD 20725

>/s/ *Nicole Kozlowski*
>Nicole Kozlowski