IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| JEFFERY BATTLE, ) <br><br> Plaintiff *pro se*, ) <br><br> v. ) <br><br> MICROSOFT CORPORATION, ) <br><br> Defendant. ) | Civil Action No. 23-cv-01822-LKG <br><br> Dated:  October 23, 2024 |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

The Defendant, Microsoft Corporation ("Microsoft"), has moved to compel arbitration and to either stay or dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(3) and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  *See generally* ECF No. 40.  Plaintiff *pro se*, Jeffery Battle, has also filed a motion for injunction.  ECF No. 35.  These motions are fully briefed. ECF Nos. 35, 40, 41, 42, 43, 46.  No hearing is necessary to resolve the motions.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** Microsoft's motion to compel arbitration; (2) **STAYS** this matter, pending the resolution of the parties' arbitration; and (3) **DENIES-AS-MOOT** the Plaintiff's motion for injunction.

**II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

**A.  Factual Background**

In this civil action, Plaintiff *pro se*, Jeffery Battle, alleges that Microsoft has defamed and harmed him, because internet searches on Microsoft's Bing search engine and its generative artificial intelligence chatbot, Microsoft Copilot, yield results that "conflat[e] Mr. Battle with a person of a similar name . . . who is a convicted terrorist."  ECF No. 1 at 1.  The Plaintiff asserts

---

[1] The facts recited in this memorandum opinion are derived from the complaint; the supplements thereto; Microsoft's motion to compel arbitration; and the exhibits attached thereto.  ECF Nos. 1, 5, 7, 8, 19, 40. Unless otherwise stated herein, the facts are undisputed.

claims against Microsoft for: (1) Assault (Count I), (2) Libel—Defamation (Count II); (3) Negligence (Count III); (4) Gross Negligence (Count IV); (5) Intentional Disregard (Count V); (6) Strict Product Liability (Count VI); and (7) Product Liability (Count VII).  *See* ECF Nos. 1, 8.  As relief, the Plaintiff seeks, among other things, certain injunctive relief, and to recover monetary damages and attorneys' fees.  ECF No. 1 at 5-6; *see also* ECF No. 35.

The Parties

Plaintiff *pro se* Jeffery Battle is a resident of Laurel, Maryland.  ECF No. 1 at 1.

Defendant Microsoft Corporation is a corporation organized under the laws of Washington State, with its principal place of business located in Redmond, Washington.  *Id*.

The Plaintiff's Microsoft Account And The MSA

As background, the Plaintiff registered for a Microsoft account in December 2003, and it is undisputed that his Microsoft account has remained active since that time.  ECF No. 40-1 at 6; ECF No. 40-2 at ¶¶ 3, 6; ECF No. 1.  The Microsoft Services Agreement ("MSA") governs the use of Microsoft's online consumer products and services, which include Bing and Microsoft Copilot.  ECF No. 40-1 at 5; *see also* ECF No. 40-2 at ¶ 2.  Pursuant to the MSA, Microsoft requires that all accountholders accept and agree to be bound by the terms of the MSA.  ECF No. 40-1 at 5; ECF No. 40-2 at ¶ 2.  And so, as Microsoft explains in the sworn declaration from its Senior Product Manager of Identity and Network Access, Suzanne Fogerty, the Plaintiff would have "had to agree to the then-operative terms of use" contained in the MSA to create his Microsoft account.  ECF No. 40-2 at ¶ 3.

The terms of the MSA are periodically updated every 12 to 18 months.  ECF No. 40-1 at 5; ECF No. 40-2 at ¶ 2.  Given this, the versions of the MSA that were in effect during the time period relevant to this case are the August 2022 and September 2023 versions of the MSA.  ECF No. 40-1 at 5.  Microsoft states that it notifies its accountholders of the new terms of service in the MSA *via* email and "interrupt notices," which are found in windows that appear on users' screens and require action before the users may proceed.  *Id*. at 5-6.  Microsoft also states that, when prompted by the interrupt notices, users are "required to accept the MSA updates that now governed their use of the services, by clicking a button labeled 'Next.'"  *Id*. at 6; *see also* ECF No. 40-7.  And so, Microsoft maintains that its accountholders could not access their accounts or

Microsoft online products and services without first acknowledging the updates to the MSA. ECF No. 40-1 at 6.

Microsoft also maintains that the Plaintiff accepted and agreed to the MSA's updated terms of service, after receiving an interrupt notice, because he was required to do so to continue using Microsoft products and services.  *Id*.; ECF No. 40-2 at ¶ 5.  And so, Microsoft further maintains that Plaintiff clicked to acknowledge the updates to the MSA's terms of service that are relevant to this dispute, on October 12, 2023.  ECF No. 40-2 at ¶ 7.

The MSA's Arbitration Provision

Relevant to the pending motion to compel arbitration, Section 15 of the MSA contains an arbitration provision, which provides that:

> **Binding Arbitration and Class Action Waiver If You Live In (or, If a Business, Your Principal Place of Business Is In) the United States.**  We hope we never have a dispute, but if we do, you and we agree to try for 60 days, upon receipt of a Notice of Dispute, to resolve it informally.  If we can't, you and we agree to **binding individual arbitration before the American Arbitration Association ("AAA") under the Federal Arbitration Act ("FAA")**, and not to sue in court in front of a judge or jury.  Instead, a neutral arbitrator will decide and the arbitrator's decision will be final except for a limited right of review under the FAA.

ECF No. 40-3 at 23-24 (August 2022 MSA) (emphasis in original); ECF No. 40-4 at 25-26 (September 2023 MSA) (emphasis in original).[2]  In this regard, the arbitration provision in the MSA defines a "dispute" to be "as broad as it can be," and to include "any claim or controversy . . . concerning the Services [defined to include Bing and Microsoft Copilot] . . . under any legal theory including contract, warranty, tort, statute, or regulation, except disputes relating to the enforcement or validity of your, your licensors', our, or our licensors' intellectual property rights."  ECF No. 40-3 at 24; ECF No. 40-4 at 26; *see also* ECF No. 40-1 at 8.

The arbitration provision also provides that:

---

[2] The arbitration provisions contained in the August 2022 and September 2023 versions of the MSA are identical in all materials respects.  *Compare* ECF No. 40-3, *with* ECF No. 40-4.

> The arbitrator may award the same damages to you individually as a court could.  **The arbitrator may award declaratory or injunctive relief only to you individually to satisfy your individual claim, but not relief that would affect non-parties.**

ECF No. 40-3 at 24 (emphasis in original); ECF No. 40-4 at 26 (emphasis in original).  In addition, the MSA contains a provision that allows a Microsoft accountholder to reject future changes to its arbitration provision.  In this regard, the MSA provides that "[y]ou may reject any change we make to [S]ection 15 (except address changes) by personally signing and sending us notice within 30 days of the change by U.S. mail . . . ."  ECF No. 40-3 at 25; ECF No. 40-4 at 27.

Lastly, the MSA contains the following notice to Microsoft accountholders regarding the arbitration provision:

> **IF YOU LIVE IN (OR YOUR PRINCIPAL PLACE OF BUSINESS IS IN) THE UNITED STATES, PLEASE READ THE BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER IN SECTION 15.  IT AFFECTS HOW DISPUTES ARE RESOLVED.**

ECF No. 40-3 at 2 (emphasis in original); ECF No. 40-4 at 2 (emphasis in original).

Microsoft maintains in this action that the parties have entered into a valid arbitration agreement that requires the Plaintiff to arbitrate his claims in this case, because he accepted and agreed to the MSA and the August 2022 and September 2023 updates to that agreement.  ECF No. 40-1 at 8, 11-12.  And so, Microsoft requests that the Court order Plaintiff to arbitrate his claims and either dismiss or stay this matter, pending the resolution of the parties' arbitration. *Id*. at 13.

### B.  Procedural History

The Plaintiff commenced this action on July 7, 2023, and he subsequently filed supplements to the complaint on July 26, 2023, August 14, 2023, August 21, 2023 and November 27, 2023, respectively.  ECF Nos. 1, 5, 7, 8, 19.

On May 2, 2024, the Plaintiff filed a motion for injunction.  ECF No. 35.

On June 10, 2024, Microsoft filed a motion to compel arbitration and a response in opposition to the Plaintiff's motion for injunction.  ECF Nos. 40, 41.

On June 11, 2024, the Plaintiff filed a response in opposition to Microsoft's motion to compel arbitration and a reply in support of his motion for injunction.  ECF Nos. 42, 43.

On July 2, 2024, Microsoft filed a reply in support of its motion to compel arbitration. ECF No. 46.

These motions having been fully briefed, the Court resolves the pending motions.

### III.    LEGAL STANDARDS

#### A.  *Pro Se* Litigation

The Plaintiff is proceeding in this matter without the assistance of counsel.  And so, the Court must construe the complaint liberally.  *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980).  But, in doing so, the Court cannot disregard a clear failure to allege facts setting forth a cognizable claim.  *See United States v. Wilson*, 699 F.3d 787, 797 (4th Cir. 2012); *see also Bell v. Bank of Am., N.A.*, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ("Although a *pro se* plaintiff is general[ly] given more leeway than a party represented by counsel . . . a district court is not obliged to ferret through a [c]omplaint . . . that is so confused, ambiguous, vague [,] or otherwise unintelligible that its true substance, if any, is well disguised.") (quotations omitted).  And so, if a plaintiff fails to allege sufficient facts setting forth a cognizable claim, the Court must dismiss the complaint.

#### B.  Motions To Compel Arbitration

This Court treats motions to compel arbitration as motions for summary judgment, pursuant to Fed. R. Civ. P. 56.  *See, e.g.*, *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) (holding that "[t]reating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute, . . . or where documents outside the pleadings must be considered") (internal citations omitted); *Owen v. CBRE, Inc.*, No. 16-773, 2016 WL 7033973, at *2 (D. Md. Dec. 2, 2016) (citations omitted). Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In this regard, a fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  A

5

dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor. *Id.* at 255 (citation omitted). But, the Court may rely only on facts supported in the record. *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). And so, the Court may not rely upon unsubstantiated assertions that are provided in the pleadings. *See id.*

### C. The Federal Arbitration Act

The FAA "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019) (citations omitted). Under Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. And so, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epis Sys. Corp. v. Lewis*, 584 U.S. 497, 505-06 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The FAA permits a party to an arbitration agreement to seek to compel another party to submit its claims to arbitration. *See* 9 U.S.C. § 4. In this regard, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* The statute also provides that, when presented with such a petition, a court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* But, if the "making of the arbitration agreement" is at issue, "the court shall proceed summarily to the trial thereof." *Id.*

In addition, Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an

> agreement, shall on application of one of the parties stay the trial
> of the action until such arbitration has been had in accordance with
> the terms of the agreement, providing the applicant for the stay is
> not in default in proceeding with such arbitration.

*Id*. § 3.  And so, the FAA provides two parallel methods for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration under Section 3, and an affirmative order to engage in arbitration under Section 4.  *See, e.g.*, *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015)); *Brito v. Major Energy Elec. Servs., LLC*, 526 F. Supp. 3d. 95, 106 (D. Md. 2021).

The Fourth Circuit has also held that the question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (brackets existing).  And so, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that Section 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate").  In this regard, "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview."  *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)).  And so, the Court "engage[s] in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted).[3]

---

[3] The Fourth Circuit has also held that "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir.

The Fourth Circuit has held that, when an arbitration agreement is valid and enforceable, the Court must "stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration.'" *Adkins*, 303 F.3d at 500. The Fourth Circuit has also recently held that the Court must stay a case pending arbitration, when the case involves an arbitrable dispute and the party opposing a motion to compel arbitration requests a stay of the case if the case is sent to arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024); *SZY Holds., LLC v. Garcia*, 2024 WL 3983944, at *2 (4th Cir. Aug. 29, 2024) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("Section 3 of the FAA provides that a court must stay litigation upon being satisfied that the issue is referable to arbitration under the agreement,' so long as 'the applicant for the stay is not in default in proceeding with such arbitration.'")).

### D. Applicable Maryland Law

Lastly, when determining whether there is a valid arbitration agreement, courts in the Fourth Circuit "apply ordinary state-law principles governing the formation of contracts" and "the federal substantive law of arbitrability." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Ngamby v Manor Care of Potomac MD, LLC*, 2024 WL 3013161, at *5 (D. Md. June 14, 2024) ("To determine the validity of the arbitration agreement, Maryland courts look at the four corners of an arbitration provision."). In this regard, Maryland courts have held that, "[t]o be binding and enforceable, contracts ordinarily require consideration." *Cheek v. United Healthcare*, 835 A.2d 656, 661 (Md. 2003) (citations omitted); *see also Chernick v. Chernick*, 610 A.2d 770, 774 (Md. 1992) (binding contracts "must be supported by consideration") (citation omitted). Under Maryland law, "consideration may be established by showing 'a benefit to the promisor or a detriment to the promisee.'" *Cheek*, 835 A.2d at 661 (quoting *Harford Cnty. v. Town of Bel Air*, 704 A.2d 421, 430 (Md. 1998)). And so, the forbearance to exercise a right or pursue a claim can constitute sufficient consideration to support a contract under Maryland law. *Id*. (citing *Chernick*, 610 A.2d at 774).

---

1989) ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'").

**IV.    ANALYSIS**

Microsoft has moved to compel arbitration and to either stay or dismiss this matter, upon the grounds that: (1) a valid arbitration agreement exists between the parties and (2) the Plaintiff's claims fall within the scope of the arbitration agreement.  ECF No. 40-1.  And so, Microsoft requests that the Court order the Plaintiff to arbitrate his claims and either dismiss or dismiss this matter, pending the resolution of the parties' arbitration.  *Id*. at 13.

In his response in opposition to Microsoft's motion, the Plaintiff does not substantively respond to Microsoft's arguments.  *See generally* ECF No. 42.  But, he generally argues that the Court should deny Microsoft's motion, because Microsoft has made "continued false and misleading statements concerning arbitration mandates," and his claims in this civil action do not fall within the scope of the MSA's arbitration provision.  *Id*. at 2-6.

For the reasons that follow, a plain reading of the MSA shows that the parties have entered into a valid arbitration agreement that covers the Plaintiff's claims in this case.  And so, the Court: (1) GRANTS Microsoft's motion to compel arbitration; (2) STAYS this matter, pending the resolution of the parties' arbitration; and (3) DENIES-AS-MOOT the Plaintiff's motion for injunction.

**A.  The Parties Have Entered Into A Valid Arbitration Agreement**

As an initial matter, Microsoft persuasively argues that the parties have entered into a valid and enforceable arbitration agreement for several reasons.

First, the unrebutted evidence before the Court shows that the Plaintiff accepted and agreed to the terms of the MSA when he first created his Microsoft account in 2003, and that he also agreed to the August 2022 and September 2023 updates to the MSA.  When determining whether there is a valid arbitration agreement in this case, the Court "appl[ies] ordinary state-law principles governing the formation of contracts" and "the federal substantive law of arbitrability."  *Muriithi v. Shuttle Exp., Inc*., 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Ngamby v Manor Care of Potomac MD, LLC*, 2024 WL 3013161, at *5 (D. Md. June 14, 2024) ("To determine the validity of the arbitration agreement, Maryland courts look at the four corners of an arbitration provision.").  And so, the Court first considers whether the evidence shows that the parties entered into the MSA.

In this case, the unrebutted evidence before the Court shows that the parties entered into the MSA, because the Plaintiff accepted and agreed to the MSA when he first created his Microsoft account.  In this regard, it is undisputed that the Plaintiff registered for a Microsoft account in December 2003, and that Microsoft requires that its accountholders accept and agree to be bound by the terms of the MSA.  ECF No. 40-1 at 5-6; ECF No. 40-2 at ¶¶ 3, 6.  And so, as Microsoft explains in the sworn declaration from its Senior Product Manager of Identity and Network Access, Suzanne Fogerty, the Plaintiff would have "had to agree to the then-operative terms of use" contained in the MSA to create his Microsoft account.  ECF No. 40-2 at ¶ 3.

The unrebutted evidence before the Court also shows that the Plaintiff accepted and agreed to the relevant updates to the MSA, when these updates were issued by Microsoft in August 2022 and September 2023.  Again, it is undisputed that the Plaintiff has continued to use his Microsoft account since he initially created the account in 2003, and that he was using this account when the claims in this action arose.  ECF No. 40-1 at 6-7; ECF No. 40-2 at ¶¶ 3, 6-7; ECF No. 1.  It is also undisputed that Microsoft periodically notified the Plaintiff and other Microsoft accountholders about its updates to the terms of service contained in the MSA, and that Microsoft accountholders could not access their accounts or Microsoft online products and services without first acknowledging these updates.  ECF No. 40-1 at 5-6.  Given this, the evidence before the Court shows that the Plaintiff accepted and agreed to the MSA's terms of service when he created his Microsoft account and that he also accepted and agreed to the updates to the MSA that occurred in August 2022 and September 2023.  ECF No. 40-2 at ¶ 7; *see O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) (holding that a mutual agreement to arbitrate establishes consideration on both sides).

Second, a plain reading of the MSA makes clear that this agreement contains a valid and enforceable arbitration provision.  Notably, Section 15 of the MSA provides that:

> **Binding Arbitration and Class Action Waiver If You Live In (or, If a Business, Your Principal Place of Business Is In) the United States.**  We hope we never have a dispute, but if we do, you and we agree to try for 60 days, upon receipt of a Notice of Dispute, to resolve it informally.  If we can't, you and we agree to **binding individual arbitration before the American Arbitration Association ("AAA") under the Federal Arbitration Act ("FAA")**, and not to sue in court in front of a judge or jury.  Instead, a neutral arbitrator will decide and the

arbitrator's decision will be final except for a limited right of
review under the FAA.

ECF No. 40-3 at 23-24 (emphasis in original); ECF No. 40-4 at 25-26 (emphasis in original).
And so, the Court reads this provision of the MSA to require that the parties to the MSA agree to
binding individual arbitration, pursuant to the FAA, if they are unable to informally resolve a
dispute covered by the arbitration provision.

The plain language of the MSA's arbitration provision also makes clear that its scope is
quite broad.  Notably, the MSA defines a "dispute" under the arbitration provision to be "as
broad as it can be," and to include "any claim or controversy . . . concerning the Services
[defined to include Bing and Microsoft Copilot] . . . under any legal theory including contract,
warranty, tort, statute, or regulation, except disputes relating to the enforcement or validity of
your, your licensors', our, or our licensors' intellectual property rights."  ECF No. 40-3 at 24;
ECF No. 40-4 at 26; *see also* ECF No. 40-1 at 8.  Given this language, the Court reads the
MSA's arbitration provision to cover a broad range of disputes and to exclude only those claims
involving intellectual property disputes from its scope.

Relevant here, the plain terms of the MSA's arbitration provision also contemplate claims
seeking injunctive relief.  *See, e.g.*, ECF No. 40-3 at 24 (providing that "[t]he arbitrator may
award declaratory or injunctive relief only to you individually to satisfy your individual claim,
but not relief that would affect non-parties.").  And so, the parties' agreement permits the
arbitrator to award injunctive relief as well as monetary damages.

In addition, a careful reading of the MSA and the complaint in this matter also make clear
that the Plaintiff's claims fall within the scope of the parties' arbitration agreement.  As
discussed above, the MSA's arbitration provision provides that the disputes covered by the
agreement include: "any claim or controversy . . . *concerning the Services* [defined to include
Bing and Microsoft Copilot] . . . under any legal theory including contract, warranty, tort, statute,
or regulation . . . ."  *Id*. (emphasis added); ECF No. 40-4 at 26 (emphasis added); *see also* ECF
No. 40-1 at 8.  As also discussed above, the complaint makes clear that the Plaintiff's various
claims in this civil action arise from his use of Microsoft services, namely Bing and Microsoft
Copilot.  ECF Nos. 1, 8.  Given this, Plaintiff's claims clearly fall within the scope of the MSA's
arbitration provision.

The Court observes as a final matter that the Plaintiff's arguments to show that the MSA and its arbitration provision are invalid and unenforceable are unpersuasive. In this regard, the Plaintiff first argues that Microsoft is "falsely manipulat[ing] the civil process in hopes of gaining favor," "attempt[ing] to mislead the [C]ourt . . . by falsely putting new arbitration agreements in place after" he filed the complaint. ECF No. 42 at 2. But, he puts forward no evidence to show that Microsoft has engaged in any fraudulent conduct with regards to the MSA, or the specific claims in this case. *See generally* ECF Nos. 1, 5, 7, 8, 19, 42. The Plaintiff's argument that his assault claim is not subject to arbitration is also contradicted by a plain reading of the complaint and the MSA, because the complaint makes clear that this claim arises out of the Plaintiff's use of Microsoft's Bing and Microsoft Copilot services. ECF No. 42 at 3, 6-7.

Lastly, the Plaintiff's argument that Microsoft has waived the right to enforce the parties' arbitration agreement is equally unavailing. The Plaintiff contends that Microsoft has waived the right to arbitrate this dispute, because Microsoft "changed [its] position" and waived the right to arbitrate this dispute, during the course of his communications with the company in an attempt to informally resolve this dispute. ECF No. 42 at 4-6. But the communications described by the Plaintiff neither show that Microsoft acted inconsistent with its right to arbitrate this dispute, nor that Microsoft waived the requirements of the MSA's arbitration provision. *See Ford v. UHG I LLC*, 2023 WL 2185751, at *6 (D. Md. Feb. 23, 2023) (holding that a defendant "must (1) know of an existing right to arbitration; and (2) act inconsistently with that right," to waive the right to enforce and arbitration agreement.

In sum, the unrebutted evidence before the Court shows that the parties entered into a valid and enforceable arbitration agreement with regards to the Plaintiff's Microsoft account, and that this agreement requires that the Plaintiff arbitrate his claims in this action. For this reason, the Court must GRANT Microsoft's motion to compel arbitration.

## B. The Court Will Stay This Matter

Having determined that the Plaintiff must arbitrate his claims, the Court next considers whether to stay or dismiss this matter. The Fourth Circuit has held that, when an arbitration agreement is valid and enforceable, the Court must "stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration.'" *Adkins v Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). The Fourth Circuit has also recently held that the Court must stay a case

12

pending arbitration, when the case involves an arbitrable dispute and the party opposing a motion to compel arbitration requests a stay of the case if the case is sent to arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024); *SZY Holds., LLC v. Garcia*, 2024 WL 3983944, at *2 (4th Cir. Aug. 29, 2024) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("Section 3 of the FAA provides that a court must stay litigation upon being satisfied that the issue is referable to arbitration under the agreement,' so long as 'the applicant for the stay is not in default in proceeding with such arbitration.'"). Because the Plaintiff's claims here are subject to arbitration, the Court STAYS this matter, pending the resolution of the parties' arbitration.[4]

## V.    CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** Microsoft's motion to compel arbitration (ECF No. 40);

(2) **STAYS** this matter, pending the resolution of the parties' arbitration; and

(3) **DENIES-AS-MOOT** the Plaintiff's motion for injunction (ECF No. 35);

A separate Order shall issue.


**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[4] Because the Court has determined that the Plaintiff's claims are subject to arbitration, the Court denies his motion for injunction as moot.